UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY T. PARROTT,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:18-cv-2714-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 13, 18) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits.[1] In her summary judgment motion, Plaintiff contends the Administrative Law Judge ("ALJ") erred by failing to apply the proper standards when evaluating fibromyalgia claims, as well as failing to properly assess other medical and lay opinions. The Commissioner opposed, and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court DENIES the Commissioner's cross-motion for summary judgment, GRANTS Plaintiff's motion for summary judgment, and REMANDS the case for further proceedings.

///

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 7.)

1

I. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

Plaintiff stopped working in July of 2013, and applied for disability insurance benefits on July 28, 2014. (Administrative Transcript ("AT") 268.) Plaintiff claimed the following medical conditions: "Fibromyalgia, Depression/anxiety, Lower back arthritis and stenosis, and Chronic Fatigue." (AT 291.) Plaintiff's application was denied initially and again upon reconsideration. (AT 154; 164.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 178–9.) At a September 22, 2016 hearing, Plaintiff testified about her conditions, and the ALJ heard testimony from a vocational expert regarding Plaintiff's ability to work. (AT 101–43.) The ALJ conducted another hearing on July 11, 2017, where two (later discredited) physicians and the same vocational expert testified. (AT 37–102.)

On August 24, 2017, the ALJ issued a decision determining that Plaintiff was not disabled. (AT 17–32.) At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since July 1, 2013, Plaintiff's alleged disability onset date. (AT 19.) At step two, the ALJ found Plaintiff to have the following severe impairments: Fibromyalgia; Degenerative Disc Disease of the Lumbar Spine; Depressive Disorder; Anxiety Disorder; and Post Traumatic Stress Disorder. (AT 20.) However, the ALJ determined at step three that these impairments did

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

not meet or medically equal the severity of a listed impairment. (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Based on this information, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> The claimant [can] stand and/or walk for six hours of an 8-hour workday with normal breaks. She can sit for six hours of an 8-hour workday, with normal breaks. The claimant can occasionally crouch and crawl. She can frequently climb ladders, ropes, and scaffolds, ramps and stairs, balance, stoop, and kneel. The claimant can tolerate occasional interaction with the public, co-workers, and supervisors.

(AT 22.) In reaching this conclusion, the ALJ stated he compared Plaintiff's symptoms to the objective medical evidence in the record, the opinion evidence given by Plaintiff's physicians, and Plaintiff's expressed symptoms. (AT 22–29.) Relevant here, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms [of fibromyalgia, her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AT 23.) Ultimately, the ALJ concluded at steps four and five that while Plaintiff incapable of performing past relevant work, there were jobs existing in significant numbers in the national economy that Plaintiff could still perform given the restrictions detailed in the RFC. (AT 29–30.)

On August 10, 2018, the Appeals Council denied Plaintiff's request for review. (AT 1–8.) Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's final decision; the parties filed cross–motions for summary judgment. (ECF Nos. 1, 13, 18, 19.)

**II.  LEGAL STANDARD**

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id.

The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

### III. ISSUES PRESENTED

Plaintiff argues the ALJ failed to apply the proper standards when he evaluated her claims—especially in light of the Ninth Circuit's pronouncements regarding fibromyalgia claims. (ECF No. 13.) Broadly speaking, Plaintiff contends the ALJ selectively cited the record in crafting the RFC. Plaintiff asserts the ALJ did so when he failed to offer the appropriate rationale for rejecting Plaintiff's subjective complaints, "provided legally insufficient reasons for rejecting various [medical] opinions," and improperly discounted Plaintiff's husband's testimony. Plaintiff maintains that once this evidence is credited as true, the court must remand for benefits. Alternatively, Plaintiff seeks a remand for further proceedings.

The Commissioner argues that in finding Plaintiff's fibromyalgia was not as disabling as Plaintiff complained, the ALJ properly followed the Agency's regulations—including Social Security Rule 12–2p ("Evaluation of Fibromyalgia"). (ECF No. 18.) The Commissioner contends the assessment of a claimant's RFC, like any disability, requires the ALJ to consider all evidence in the record—including a claimant's subjective symptoms, the entirety of the medical evidence, and any lay opinions. Here, the Commissioner argues the ALJ did in fact consider the entire record, and crafted Plaintiff's RFC to conform to her disabilities. Thus, the Commissioner contends the RFC (and decision as a whole) is supported by substantial evidence, which should result in the ALJ's opinion being affirmed.

### IV. LEGAL STANDARDS

In Revels v Berryhill, the Ninth Circuit reviewed the standard for evaluating both medical opinions and a claimant's testimony, noted the 2012 "sea–change" regarding fibromyalgia, and applied the standards to fibromyalgia's "unique symptoms and diagnostic methods." 874 F.3d 648 (9th Cir. 2017). In this case, in addition to reviewing the general standards for social security cases, the Court quotes from Revels at length below—finding it controlling.

///

### A. Evaluation of a Claimant's Testimony and Third–Party Reports

In evaluating the extent to which an ALJ must credit the claimant's report of her symptoms, the Ninth Circuit has set forth the following two–step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels, 874 F. 3d at 655 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014). To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to each witness." Id. (citing Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)).

### B. Evaluation of Medical Source Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202. The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. 20 C.F.R. § 404.1527(c)(2)–(6).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). Conversely, to reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." See 20 C.F.R. § 404.1527(b), (f). While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so. Molina, 674 F.3d at 1111. The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. Id. (citing § 404.1527(f)).

C. Social Security Rule 12–2P

Prior to 2012, fibromyalgia was "poorly understood within much of the medical community," and considerable skepticism existed whether it was a real disease. Revels, 874 F.3d at 656 (citing, among others, Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004)). However, the Commission has since recognized fibromyalgia as a "valid basis for a finding of disability." Id. (quoting Social Security Rule 12–2P). Under 12–2P, the ALJ is to examine distinct sets of criteria to determine whether a claimant suffers from fibromyalgia. Critically, any diagnosis "does not rely on X–Rays or MRI's," and since the symptoms "wax and wane," a claimant may have "bad days and good days." Id. at 657. Thus, the Ninth Circuit has reinforced that in considering 12–2P, the ALJ should analyze a claimant's RFC considering "a longitudinal record whenever possible." Id.

| | |
|---|---|
| 1 | **V.   DISCUSSION** |

For the reasons stated below, the Court concludes that the ALJ has not sufficiently supported his RFC conclusion, requiring remand.

First, ALJ erred in resolving Plaintiff's testimony about the severity of her fibromyalgia symptoms. Essentially, the ALJ appears to have rejected Plaintiff's claims for three reasons: (1) various MRI's and other flex/muscle tests showed results not in line with Plaintiff's subjective complaints of fibromyalgia pain; (2) Plaintiff could perform "a wide range of activities," including going on a trip, exercising daily and managing her daily life; and (3) at certain times, Plaintiff reported being able to control her fibromyalgia symptoms with medication. (See AT 23–24.) However, case law—particularly Revels, 874 F.3d 648—shows how the ALJ's rationale is insufficient.

One reason the Ninth Circuit found the ALJ's rationale insufficient in Revels was because he relied on "the lack of 'objective findings' supporting [the claimant's] claims of severe pain." Id. at 666. The ALJ cited various X–rays and MRI's of the claimant's neck and back, as well as her apparent normal muscle strength, tone, stability and range of motion. Id. However, these conditions were not inconsistent with fibromyalgia," which is diagnosed "entirely on the basis of patients' reports of pain and other symptoms." Id. (citing Benecke, 379 F.3d at 590). Similarly here, it appears the ALJ lumped together Plaintiff's fibromyalgia and lumbar pain, then cited to two medical tests that, like Revels, are not inconsistent with fibromyalgia. (AT 24.) Alongside other errors, this rationale is insufficient to discount Plaintiff's complaints of severity.

Another reason the Ninth Circuit found error in Revels was due to the ALJ's treatment of the claimant's daily activities. Id. at 667. There, the ALJ relied on the claimant's ability to do housework, visit relatives, shop, and the like. Id. However, the Ninth Circuit held these were also not inconsistent with fibromyalgia. Id.; see also Voisard v. Berryhill, 2018 WL 4488474, *4 (E.D. Cal. Sept. 19, 2018) ("The Ninth Circuit 'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.'") (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)) Similarly here,

the ALJ relied on Plaintiff's walking, driving, shopping, and housework as reasons to discount her claims of severe symptoms. (AT 23–24.) Additionally, the ALJ's reliance on Plaintiff's 10–day trip is unpersuasive, given the "wax and wane" nature of fibromyalgia. See Revels, 874 F.3d at 667.

Third, the undersigned is not convinced of the ALJ's rationale that Plaintiff's condition was adequately managed with medication. True, the record does contain periods where Plaintiff's fibromyalgia appeared under control. (See AT 24, citing six separate instances where Plaintiff's pain subsided while taking her prescribed medication). However, in reaching this result, the ALJ appears to have inappropriately cherry–picked instances where Plaintiff was doing well without considering other times when she reported severe pain despite her medication.[3] See Voisard, 2018 WL 4488474 at *3–4 ("[O]ccasional reports of an absence of [fibromyalgia] symptoms does not contradict other instances where that symptom is reported; symptoms may wax and wane.") (citing Trevizo v. Berryhill, 871 F.3d 664, 680 (9th Cir. 2017); see also Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984) ("ALJs "need not discuss all evidence presented to [them]. Rather, [they] must explain why significant probative evidence has been rejected."); Diedrich v. Berryhill, 699 F. App'x 726 (9th Cir. 2017) (reaffirming the proposition).

Corresponding to this third point, the ALJ's treatment of the medical opinion evidence also appears deficient, due to his failure to discuss certain portions of the record related to the severity of Plaintiff's fibromyalgia. The ALJ assigned little weight to the opinion of Plaintiff's first treating physician, Dr. Mongatti–Lake, citing to three interactions in 2014 and concluding the Doctor's opinions were primarily based on Plaintiff's subjective complaints and inconsistent with Plaintiff's daily activities. (AT 26.) In doing so, the ALJ failed to discuss Dr. Mongatti–Lake's treatment of Plaintiff between May of 2013 and January of 2014—the period where Plaintiff's fibromyalgia was first diagnosed and where her treatment plan began.[4] The ALJ

---

[3] Specific examples of this deficiency are interwoven with the ALJ's treatment of the medical opinions in the record, and so are detailed in the following paragraphs.

[4] The ALJ is correct that most of the fibromyalgia references during this period come from

mentions Plaintiff's March 2016 exam with Dr. Tong, her reduction in pain medication over the next few months, and her improvement with pain, stress, and self–care. (See AT 20, citing AT 621–26.) However, the ALJ fails to mention Dr. Tong's note that Plaintiff's pain "increases with prolonged activity or [] inactivity." (AT 621.) Nor did the ALJ discuss Plaintiff's interactions with her treating physician Dr. Xu throughout 2016—except those supporting his RFC conclusion.[5] The ALJ summarized the opinions of Dr. Flores, Plaintiff's treating psychiatrist, as "vague" (AT 28)—while failing to discuss Dr. Flores's finding of moderate but worsening symptoms and prescription for Zoloft. (AT 914–17.) The ALJ failed to mention Plaintiff's interaction with Juliana Simmons in January of 2016. (AT 896–903.) The undersigned makes no judgments as to what the resolution of these instances should be—only that it is the ALJ's duty to resolve conflicts. See Vincent, 739 F.2d at, 1394–95 (9th Cir. 1984) ("The ALJ must explain why significant probative evidence has been rejected."). This is especially critical in light of Revels, SSR 12–2P, and the need to examine the waxing and waning of Plaintiff's fibromyalgia across the longitudinal record.[6] See Revels, 874 F.3d at 667.

---

Plaintiff herself. However, Dr. Mongatti–Lake did in fact prescribe medication based on Plaintiff's complaints of severe pain—which included increasing her Flexeril dosage in January 2014. (AT 392.) Further, Plaintiff complained of brain fog and concentration difficulties given the medication. (AT 393.) While these records come earlier in Plaintiff's treatment plan, they are nonetheless probative of the severity of her condition and must be discussed when resolving conflicts in the "longitudinal record." See Revels, 874 F.3d at 657.

[5] It is possible the ALJ intended to resolve many of these interactions between Plaintiff and Dr. Xu in a similar manner as he did with Dr. Mongatti–Lake—that between April and September of 2016, much of the discussion regarding Plaintiff's fibromyalgia came from Plaintiff's complaints of her symptoms. However, the ALJ never says this, and like his treatment of Mongotti–Lake, he leaves out other records. For example, in April 2014, Plaintiff messaged Dr. Xu that she "just feel[s] awful all the time . . . [in] constant underlying pain . . . not sleeping . . . ." (AT 659.) In June 2016, Plaintiff complained to Dr. Xu of a "constant state of pain," fluctuating between low and high pain days. (AT 731.) Like with Dr. Mongatti–Lake, the ALJ cannot ignore these instances, given that fibromyalgia's symptoms "wax and wane." See Revels, 874 F.3d at 656.

[6] The impression given by the August 2017 decision is that the ALJ believes Plaintiff's physicians have pegged her as a malingerer, but the ALJ does not want to say so. If this is indeed the thrust of the decision, the ALJ should state as much, cite the evidence in support, and detail the reasons to discount the evidence probative of Plaintiff's claims of severe and debilitating fibromyalgia. See Revels, 874 F. 3d at 655. If this is not the case, the ALJ should heed the two–step framework for discounting a claimant's subjective symptoms in the absence of malingering. See Id.

9

Given that the ALJ released his decision in August of 2017—just two months prior to the Ninth Circuit's release of its opinion in Revels—the undersigned will not belabor the issue further. On remand, the ALJ should closely consider the directives of the Ninth Circuit regarding the proper method by which to analyze fibromyalgia cases (as well as, of course, SSR 12–2P). Because of this remand, and because of the need to review the "longitudinal record," the ALJ will be required to perform a complete review of Plaintiff's case up through the present. Thus, the Court will refrain from commenting on Plaintiff's remaining challenges (the weight of certain physicians and of her husband's lay testimony)—the standards for which are well delineated in Revels. See also Molina, 674 F.3d at 1111 (regarding non–medical sources).

Finally, the Court recognizes Plaintiff's request for a remand with benefits. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). However, as indicated above, the undersigned cannot say that additional proceedings would have no utility in the present case. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's cross-motion for summary judgment (ECF No. 18) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 13) is GRANTED;
3. This matter is REMANDED for further administrative proceedings; and
4. The Clerk is directed to enter judgment in the plaintiff's favor and close the case.

Dated: December 19, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

parr.2714